The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LOUISE RYAN, et al., <br><br>          Plaintiffs, <br><br>     v. <br><br> SUSAN DREYFUS, <br><br>          Defendant. | No.  C09-0908RAJ <br><br> ORDER |

## I.  INTRODUCTION

This matter comes before the court on Plaintiffs' motion for attorney fees (Dkt. # 167).  Neither party requested oral argument, and the court finds the motion suitable for disposition on the basis of the parties' briefing and supporting evidence.  For the reasons explained below, the court GRANTS the Plaintiffs' motion (Dkt. # 167).

## II. BACKGROUND

Plaintiff Washington State Long-Term Care Ombudsman program ("LTCO") is a non-governmental, non-profit agency that advocates for people living in nursing homes, boarding homes, and adult family homes.  Plaintiff Louise Ryan has been the Ombudsman of the LTCO program since 2007.  The Plaintiffs also include some named individual recipients of services via Adult Day Health ("ADH") program, which is part of Washington's Medicaid home and community-based long-term care system, as well as the class of more than 950 ADH recipients.  Defendant Washington

ORDER - 1

State Department of Social and Health Services ("DSHS"), headed by Defendant Susan Dreyfus, administers, *inter alia*, the ADH program, which allows eligible individuals the opportunity to receive long-term care services in their own homes, in supported living settings, or in community residential facilities (adult family homes and boarding homes), rather than in nursing homes.

After DSHS scheduled to eliminate some ADH services and did not provide notice and/or replacement services for all class members, the Plaintiffs filed this lawsuit and sought injunctive relief. The court found that the Defendants had violated the Plaintiffs' right to due process, and required the Defendants to provide ADH services to all class members while providing notice and an opportunity to be heard. *See* Order (Dkt. # 164).

Plaintiffs now request an award of $288,530.19 under 42 U.S.C. § 1988, for the fees expended in obtaining relief from this court.

## III.   ANALYSIS

**A.   Legal Standards.**

A court may award reasonable attorney fees to a party who prevails in a 42 U.S.C. § 1983 action. *See* 42 U.S.C. § 1988. To be a "prevailing party" for purposes of Section 1988, a party must succeed on "any significant issue in litigation which achieves some of the benefit the parties sought in bringing this suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)). A prevailing plaintiff need not obtain a final judgment in its favor, but must "(1) [win] on the merits of its claim, (2) the relief received materially alters the legal relationship between the parties by modifying the defendant's behavior, and (3) that relief directly benefits the plaintiff." *UFO Chuting of Hawaii, Inc. v. Smith*, 508 F.3d 1189, 1197 (9th Cir. 2007).

In order to determine a reasonable amount of attorney fees, the court engages in

a two-step calculation. First, the court calculates a lodestar amount "by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Hensley*, 461 U.S. at 437. Second, the court examines the presumptively reasonable lodestar amount to determine whether it should be increased or reduced based on factors that were not subsumed into the lodestar calculation. *See Cunningham v. County of Los Angeles*, 879 F.2d 481, 484 (9th Cir. 1988). In this second step, the court considers whether the twelve *Kerr* reasonableness factors were subsumed in the first step:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976). The Supreme Court has since held that increasing an award because the fee is contingent is improper. *See City of Burlington v. Dague*, 505 U.S. 557, 567 (1992).

**B.     The Plaintiffs' Lodestar Amount is Reasonable Without Adjustment.**

The Defendants agree that Plaintiffs are the prevailing party and are entitled to an attorney fee award under Section 1988; they dispute only whether the lodestar amount is proper.[1] According to the Defendants, the lodestar amount is too high with respect to both the billing submitted by Plaintiffs' counsel Andrea Brenneke and her law firm, MacDonald Hoague & Bayless, and the billing submitted by LTCO counsel

---

[1] The court notes that the Defendants also do not challenge the reasonableness of any counsel's billing rates other than Jeff Crollard's.

ORDER - 3

Jeff Crollard.  The Defendants do not dispute that Plaintiffs are entitled to $1,618.69 in costs.  The court will first consider the Defendants' objections with regard to the award sought by Ms. Brenneke and her firm, and then turn to consider the objections regarding Mr. Crollard.

> **1.    The MacDonald Hoague & Bayless Timesheets Cover Only Compensable Work, are Adequately Specific, and Do Not Reflect Billing Paralegal Work at an Attorney Rate; No Adjustment to the Lodestar Amount is Warranted.**

According to the Defendants, Ms. Brenneke's time records reveal that she (1) seeks compensation for non-compensable activities such as lobbying and pre-filing negotiation, (2) performed and billed for work that would have been more efficiently performed by non-attorney staff or summer associates, and (3) has not defined her work with enough specificity to determine whether the work performed was reasonable.  Defendants request that the court reduce her fee award by 50% due to these concerns.

First, the court finds that Ms. Brenneke's billing does not include non-compensable activities.  Lobbying activities are compensable if they are related to the dispute at issue in the litigation.  *See, e.g.*, *Glover v. Johnson*, 934 F.2d 703, 717 (6th Cir. 1991) (finding that lobbying for appropriations for prison education was related to litigation challenging the lack of prison education).  Here, Ms. Brenneke lobbied against cuts to the ADH program, and then used this litigation to challenge the cuts once they were put in place.  *See* Brenneke Decl. (Dkt. # 168) ¶¶ 24-26.  Ms. Brenneke's lobbying efforts "were at the heart of this dispute," and are therefore compensable.  *Glover*, 934 F.2d at 717.

Likewise, Ms. Brenneke appropriately billed for pre-filing activities that constitute responsible case preparation.  *See* Brenneke Decl. (Dkt. # 168), Ex. 1

ORDER - 4

(describing activities in the two weeks before a fee agreement was distributed). Though the Defendants contend that it is "[s]tandard practice in the legal community [] not to bill the client for work performed in testing the litigation waters and formulating a fee agreement," Defs.' Opp'n (Dkt. # 185) at 8, Ms. Brenneke routinely bills her clients for pre-filing activities that are essential to her determination to move forward with litigation. *See* 2d Brenneke Decl. (Dkt. # 189) ¶ 4. The timesheet descriptions reflect Ms. Brenneke's prudent exercise of billing judgment, in that Ms. Brenneke included activities that are directly related to preparing for litigation, such as legal research regarding claims brought in analogous cases, communication with potential named plaintiffs, and planning interviews with the named plaintiffs' treating doctors. *See* Brenneke Decl., Ex. 1. All of the activities listed on Ms. Brenneke's timesheets between May 20 and June 7 (the dates Defendants challenge because the fee agreement was not distributed until June 7) were undertaken with potential litigation in mind: the very first timesheet entry describes calls and e-mails discussing "potential litigation." *Id.* Because these activities were necessary and useful to the litigation, it is irrelevant that they occurred before the fee agreement was formalized. The work was nonetheless expended for purposes of this litigation, and as such, the court finds that they are compensable. *See, e.g.*, *Dowdell v. City of Apopka, Fla.*, 698 F.2d 1181, 1188 (11th Cir. 1983) (finding investigation of claims before named plaintiffs were identified to be compensable).

And though Defendants further challenge Ms. Brenneke's billing records as "so general in nature as to provide no guidance whatsoever in determining whether the time was *reasonably* spent on the litigation," the court does not agree. Defs.' Opp'n at 6 (emphasis in original). The Defendants point to the July 30, 2009 entry as a representative example of vagueness — Ms. Brenneke described her 9.4 hours expended that day as follows:

ORDER - 5


> Work on TRO motion; work on Amended Complaint, review DSHS assessments and revise declarations of multiple plaintiffs, recipients, providers; review J. Crollard's and L. Baker's client summaries and incorporate and edit for inclusion in TRO motion; review class action and TRO/Preliminary Injunction legal research and strategize re: civil procedure issues and need for contemporaneous class action motion[.]

Brenneke Decl., Ex. 1.  Defendants compare this billing entry to the vague entries eschewed in *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 388 F. Supp. 2d 159, 166-67 (W.D. N.Y. 2005).  In that case, the court found that entries describing a meeting regarding "'strategy,' 'research,' and 'status,'" or time spent working on "brief[s]" and "affidavit[s]" and "preparing" for conferences or oral arguments were impermissibly vague because they lacked explanation of which issues were being researched or which briefs were being prepared.  *See* 388 F. Supp. 2d at 166.

Ms. Brenneke's timesheets are not analogous to timesheets described unfavorably in *Anderson*.  Though Ms. Brenneke does use generic verbs such as "work," "prepare," and "review," her timesheets tie those actions to specific issues and pleadings.  Entries including such work as "e-mail to advocates" or "e-mails re: possible media strategy" are specific enough in light of the factual context of this case and Ms. Brenneke's additional explanations.  *See, e.g.*, 2d Brenneke Decl. ¶ 11.  The court is satisfied that Ms. Brenneke's submissions are sufficiently specific to establish the reasonableness of the hours expended.

The court also finds unpersuasive the Defendants' argument that Ms. Brenneke billed for paralegal duties at attorney rates.  According to Defendants, Ms. Brenneke should not have billed for preparing and revising declarations, but should have delegated that work to an experienced paralegal or a summer associate.  The court notes that the Defendants do not cite any authority for the proposition that preparing or revising declarations is appropriate work for a non-lawyer, and the court is aware of no

ORDER - 6

1  authority finding that work on declarations equates to the type of clerical work that
2  attorneys routinely assign to non-lawyers.  *See*, *e.g.*, *Lipsett v. Blanco*, 975 F.2d 934,
3  940 (1st Cir. 1992) (holding that "clerical or secretarial tasks ought not to be billed at
4  lawyers' rates, even if a lawyer performs them," and finding that translating constitutes
5  such a task).  The timesheets submitted by Ms. Brenneke's firm reflect that non-
6  lawyers also prepared and worked on declarations in this case, but that does not lead
7  the court to believe that Ms. Brenneke's involvement was clerical or secretarial — it
8  merely suggests that Ms. Brenneke delegated to non-lawyers where appropriate.
9  Because declaration preparation is not the type of work that is generally clerical or
10 secretarial, the court finds that Ms. Brenneke's work in that area is appropriately
11 compensable at attorney rates.

12       Finally, the court turns to the Defendants' request that the court reduce Ms.
13 Brenneke's lodestar amount on the basis of four *Kerr* factors:  the novelty and
14 difficulty of the questions involved, the preclusion of other employment by the
15 attorney due to the acceptance of this case, the undesirability of this case, and awards
16 in similar cases.  *See* Defs.' Opp'n at 5.

17       The court does not agree that an application of the disputed *Kerr* factors
18 supports a reduction of the lodestar amount.  First, as to novelty and complexity of the
19 case: Though the Defendants contend that the Plaintiffs prevailed due to well-settled
20 law regarding due process and administrative hearing rights, the court notes that the
21 Defendants opposed most of the Plaintiffs' motions and cited authority to support their
22 positions.  Furthermore, the Plaintiffs sought a relatively novel form of emergency
23 classwide prospective injunctive relief.  The court does not find that this case lacked
24 novelty or complexity to warrant a reduction.

25       As to whether this case precluded Plaintiffs' counsel from performing other
26 work, the court finds that Ms. Brenneke's timesheets reveal that she devoted a

substantial amount of time to this case during the four months of active litigation. While she may have accepted this work in May 2009 because she did not foresee conflicts at that time, the amount of time she spent on this case following that decision nonetheless precluded her from taking on other opportunities that may have presented themselves after May.  Thus, the court finds that application of this factor does not warrant a reduction of the lodestar amount.

The Defendants also argue that this case is "perfectly tailored" to Plaintiffs' counsel's expertise, and thus cannot be considered "undesirable" to them.  *See* Defs.' Opp'n at 5.  The Defendants ignore the fact that the Plaintiffs sought non-monetary injunctive relief in this case, which leaves Plaintiffs' counsel uncertain as to whether they would be paid for their work.  Though the subject matter of this litigation may have been interesting and intriguing to Plaintiffs' counsel, the court finds that the risks of non-payment inherent in this type of case would make it undesirable to at least some degree.  Thus, the "undesirability" factor does not support a reduction of the lodestar amount.

Last, though the Defendants argue that because the Plaintiffs have not cited to cases where a similar total amount of fees was awarded where, as here, neither discovery nor trial was necessary, this argument seems to miss the point.  The court will not penalize Plaintiffs' counsel for obtaining a favorable result without the need for discovery or trial.  The Defendants have cited no authority for reducing a lodestar amount based on the lack of discovery or trial, perhaps because it is the rare case where a plaintiff prevails on a Section 1983 claim without at least participating in the discovery process.  Furthermore, the Plaintiffs have submitted evidence of a similar hourly rate applied in similar cases.  *See, e.g.*, Mann Decl. (Dkt. # 175) ¶ 27.  An analysis of this factor does not suggest to this court that the lodestar amount should be reduced.

Thus, the court has rejected each of the Defendants' arguments for reduction of the lodestar amount. The court finds that the hours Ms. Brenneke's firm expended on this litigation were therefore reasonable, and that the rates charged by those individuals were also reasonable, as evidenced by the Plaintiffs' submissions showing that Ms. Brenneke's $350/hour rate is within the range of prevailing market rates for similar services from comparable attorneys. *See* Goater Decl. (Dkt. # 173), Mann Decl., Mindenbergs Decl. (Dkt. # 176).[2]

### 2. Mr. Crollard's Request is Reasonable.

The Defendants argue that Jeff Crollard, LTCO counsel, should not be compensated as requested at the $350 per hour rate that they do not dispute is reasonable for a private attorney. Rather, because Mr. Crollard's contract with the LTCO sets his billing rate at $130 per hour, the Defendants contend that he should be limited to billing at that rate for his work on this case. They do not cite any authority for this position, and overlook the case law stating that

> the determination of a reasonable hourly rate "is not by reference to the rates actually charged the prevailing party." *See, e.g.*, *Mendenhall v. Nat'l Transp. Safety Bd.*, 213 F.3d 464, 471 (9th Cir. 2000) (quoting [*Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986)]). Rather, billing rates "should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity."

*Welch v. Metropolitan Life*, 480 F.3d 942, 946 (9th Cir. 2007) (quoting *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992)). Thus, Mr. Crollard's contractual rate is not "dispositive," as claimed by the Defendants. Defs.' Opp'n at 9. The Defendants do not dispute that $350 is reasonable hourly rate for a

---

[2] The court notes that the Defendants do not challenge the reasonableness of Ms. Brenneke's billing rate.

ORDER - 9

private attorney, and based on the Plaintiffs' submissions supporting that conclusion, the court finds that that rate should apply to Mr. Crollard as well as Ms. Brenneke under *Welch*.

The court finds the Defendants' remaining objections to Mr. Crollard's billing to be likewise unpersuasive in light of Mr. Crollard's declaration further explaining his LTCO contract and the work he performed regarding overpayment and the September 4, 2009 press release. According to Mr. Crollard's LTCO contract, in cases where he receives an attorney fee award, he is required to reimburse the LTCO for the fees it has paid him and he may retain the remainder. *See* 2d Crollard Decl. (Dkt. # 188) ¶ 7. As this arrangement is contemplated by the LTCO, perhaps in recognition of Mr. Crollard's willingness to contract for a below-market rate (*see* 2d Crollard Decl. ¶ 6), and prevents double payment, it is not a "windfall" as Defendants contend. *See* Defs.' Opp'n at 10.

The Defendants also argue that Mr. Crollard's billing time should not include work spent on "overpayment risk" because that issue concerns ADH providers (who are not parties to this litigation) and not ADH recipients. *See* Defs.' Opp'n at 11. As Mr. Crollard's declaration clarifies, however, his work researching "overpayment risk" addressed whether ADH recipients would be required to pay back an overpayment if they did not prevail at an administrative hearing. *See* 2d Crollard Decl. ¶ 2. Because Mr. Crollard's work on this issue was used by the LTCO to explain the administrative process available to ADH recipients as a result of this litigation, the court finds that this work is compensable.

Likewise, Mr. Crollard's work on the September 4 press release is compensable. Because the LTCO did not have contact information for all ADH recipients, it requested that Mr. Crollard draft a press release to inform the recipients of the court's reinstatement of their services. This work was thus integral to the

ORDER - 10

litigation and should be compensated.

Lastly, for the same reasons as described with respect to Ms. Brenneke, the court finds that Mr. Crollard should be compensated for the pre-filing work he performed on this case. His timesheets describe pre-filing work including advocacy against cuts to the ADH program and researching potential legal claims. *See* Crollard Decl. (Dkt. # 178), Ex. 1. The court finds that these activities are related to the dispute at issue in this litigation and constitute responsible case preparation, such that they should be compensated along with post-filing work.

## IV.  CONCLUSION

For the reasons explained above, the court GRANTS the Plaintiffs' motion (Dkt. # 167), and awards fees and costs for work performed through September 18, 2009, as follows:

(1) MacDonald Hoague & Bayless attorney fees: $204, 572.50

(2) Crollard Law Offices attorney fees: $82,339.00

(3) MacDonald Hoague & Bayless costs: $1,618.69

Interest shall accrue on this award from this date forward at the applicable statutory rate.

The Plaintiffs may file a fee petition for work performed after September 18, 2009, at a later date.

DATED this 26th day of April, 2010.

*[signature: Richard A. Jones]*
The Honorable Richard A. Jones
United States District Judge

ORDER - 11